### KING AND UHL V. ELIZABETH HERB.

1. DUTY OF OWNER OF BUILDING TO PROPERLY GUARD A MANHOLE IN THE SIDEWALK, WHEN OPEN.

An agreement by a coal dealer to guard a manhole in the sidewalk while coal is being delivered, does not relieve the owners of the building, who are in possession, from the duty they owe the public to properly guard such man-

hole. Such an agreement has not the tendency to establish a contract relieving the owners from such duty: and, *quaere*, whether they could by contract be relieved of such duty.

2. NEGLIGENCE OF OWNERS IN NOT PROPERLY GUARDING THE MANHOLE.

Where such manhole was open for the reception of coal and plaintiff fell into it: *Held*, that the owners' duty was affirmative and their negligence an omission to act in properly guarding the manhole.

3. OPENING OF MANHOLE BY EMPLOYEE OF OWNERS, EFFECT.

It is immaterial whether the act of an employee of such owners, in opening the manhole, was outside the scope of his employment.

4. FAILURE OF DRIVER OF COAL WAGON TO PROPERLY GUARD MANHOLE, EFFECT.

The failure of the driver of the coal wagon to properly guard the manhole, renders the owners liable, even though the cover was removed by a volunteer, if such assistance was accepted by the driver.

5. VERDICT WILL NOT BE DISTURBED, WHEN.

Though a verdict is based upon wrong reasons, if clearly right, under the conceded facts of the case, it will not be disturbed.

ERROR to the Court of Common Pleas of Cuyahoga county.

HALE, J.

The following facts are either conceded or clearly proven :

The plaintiffs in error owned a building fronting on Euclid avenue, known as the King and Uhl Block. Extending from the basement of this building, under the sidewalk, are six vaults, one of which is used for the reception of coal to be used in the heating of the building. There is an opening in the sidewalk sixteen to eighteen inches in diameter for the reception of coal into the vault, and, when not in use, is usually protected by an iron cover. Most of the building is occupied by lessees, but King and Uhl have the care of the hall-ways, stairs, elevators and basement or at least that portion of the basement occupied by the boiler and heating apparatus. They furnish heat for the entire building.

At the time of this transaction King and Uhl employed an engineer or fireman whose duties were to run the boiler and receive and receipt for the coal needed for that purpose. They also employed a man by the name of Babcock, whose conceded duties were to run the elevator and care for the halls and stairways. Other employees, if any, had no part in this transaction and need not be noted.

The Zettelmeyer Coal Company had for several years furnished all the coal used by King and Uhl in heating the building. On the night of this accident the coal company had by its agents, under its arrangement with King and Uhl, delivered to them at that building a load of coal. The driver came to the building with the coal, and took the bill for the same to the fireman in the basement, who receipted for the same. The driver then returned to his wagon. The fireman went to the vault and assisted in the removal of the cover of the coal-hole; he did this at a signal from Babcock, then on the sidewalk, who, after the cover had been loosened by the engineer, removed it from the hole for the receipt of the coal. Scantling were kept in the vault, which were used to form a bridge from the street to the top of the curb, to prepare the way for the wagon to back up to the coal-hole. These the engineer passed out, either to the driver or Babcock, and they were used for the purpose intended. After the cover was removed and before the wagon was in place for dumping the coal, the defendant in error, passing along the sidewalk, stepped into the hole and was quite seriously injured.

So far there was no substantial conflict in the testimony. Upon other issues, there was a conflict of testimony.

It was claimed on the trial, although not specifically so alleged in the pleadings, that the coal company had been put in the exclusive possession and control of the coal-hole under a contract with King and Uhl, by the terms of which it had assumed all responsibility for its care and the whole duty of protecting the public from the dangers incident to its use, and that King and Uhl by such contract were relieved from any responsibility or duty to the public in its use for the purposes for which it was then used.

The only evidence given in support of the contract which it is claimed, thus exempted King and Uhl from responsibility, is found in the testimony of Mr. King, one of the plaintiffs in error, on pages 280, 281 of the record. Mr. King, after stating that he made the arrangement for the purchase and delivery of the coal with Mr. Zettelmeyer, was then asked:

"What was the talk, if any, between you and Mr. Zettelmeyer about furnishing the coal for your vault, how to put it in, and what was said about it by him as the representative of that company?"

Answer. "Mr. Charles Zettelmeyer came to my office about the first of November, 1893, and we talked over the matter of furnishing coal, and finally came to an agreement—."

Question. "What was said?"

Answer. "He said he would furnish coal at $1.30 for slack coal delivered in the vault. I asked him how he would put it in the hole, seeing the coal holes were so far from the curbstone. He said they would bring a chute to run the coal from the wagon into the hole. I said, 'There is danger of people tumbling into that hole when the chute is there, I'm afraid, because they are so far from the curbstone.' He asked me 'How large is that vault?' I told him it might hold a car-load and might not quite hold a car-load of coal. He said, 'We will send two teams at the same time when coal is brought, and one can watch the hole and the other unload, and *vice versa.*' I says, 'Go ahead, furnish the coal.'"

This is substantially all that was said by Mr. King about the contract. It further appears from his testimony that at first the coal company did send two men in accordance with that talk, but latterly omitted to do so, and much of the coal was delivered by one man.

This testimony of King was denied by Zettelmeyer, an officer of, and a witness for the coal company.

Upon the subject of this contract, after stating the claims of exemption made by King and Uhl, the court charged:

"It is denied by the coal company that any such contract was made by them; but I say to you that the defendants King and Uhl would not be released from liability by reason of said contract, if such contract you find there was, if, under the rules I shall give you, you find that on November 24, 1896, the defendants King and Uhl were negligent and that such negligence of said defendants was the proximate cause of the injury to the plaintiff, and the plaintiff was not negligent, then I say to you that King and Uhl would be liable."

The effect of this charge was, that no contract had been made between King & Uhl and the coal company, whereby they were released from such responsibility.

If the evidence fairly tended to prove a contract that would relieve King and Uhl from the duty which, in the absence of such contract, they owed to the public to guard those travelling upon the sidewalk, from

danger incident to the use of this coal-hole, permitted to be made in the side-walk by the city authorities, then the charge relating to the subject of this contract was erroneous. It may well be doubted, however, whether King and Uhl could, by a contract, relieve themselves from the duty of guarding the public from the dangers incident to the use of this opening in the sidewalk, when used for the purposes for which it was then being used.

If this hole was left open and unguarded, it was dangerous to those travelling upon the sidewalk, and the duty of guarding the public from such danger it is conceded was primarily upon King and Uhl. They were the owners of and in possession of the abutting property; the vault under the sidewalk was constructed by them and for their use; the permit to open into the vault through the sidewalk, was given to them and was opened for their use. If it be granted that the contract of the coal company required it to deliver the coal in the vault, it could only be so delivered through this hole upon the premises of King and Uhl for their use.

It is not analogous to those cases in which the entire premises are put into the possession of a lessee or the control of an independent contractor for the purpose of repair or construction of some building or other structure upon the premises. It was, undoubtedly, the duty of the coal company to use ordinary care in the delivery of the coal, and whether the coal company is, in any way, liable or responsible to King and Uhl for their failure to perform that duty, we are not now concerned or called upon to decide. But we are of the opinion that King and Uhl, notwithstanding this contract, still owed a duty to properly guard and protect a traveller on the highway from the dangers incident to its use. We cite, upon this proposition; Calder v. Smalley, 66 Iowa, 223, 156 N. Y., 354, The Trustees of the Village of Canandaigua v. Foster, I refrain from citing other authorities to the point.

It is not our purpose to review and comment on the decisions of the Supreme Court of the state, which may be said to aid in determining under what circumstances the owner of a building can, by independent contract, relieve himself from such duty and liability. And without definitely determining whether such contract could be made in the situation of these parties, we are satisfied that the evidence falls far short of establishing such a contract or tending in any substantial degree towards proving a contract having such effect.

Interpreting the evidence in the light of the circumstances in which the parties were placed, the purposes for which the opening in the sidewalk was being used at the time, it had no tendency to establish a contract which would relieve King and Uhl from the duty to the public and their liability to a passer on the sidewalk, who received an injury from the careless and negligent use of that opening. The defense that this duty had been shifted by King and Uhl, to the coal company, under the contract between those parties, was not sustained, and there was no error in the charge of the court to the jury upon that subject.

Again, it fairly appears from this testimony, that Babcock, an employee of King and Uhl, removed the cover from this hole after it had been loosened by the fireman, and that he then failed to properly guard it while the driver of the coal wagon backed his wagon on to the sidewalk.

The claim in behalf of the plaintiffs-in-error, however, is that Babcock at that time was acting without the scope of his employment, and

that for any carelessness and negligence on his part, they are not responsible. In this connection, two complaints are made of the rulings of the court : First, it is claimed that the court erred in the rejection of testimony offered by the plaintiffs in error tending to establish the duties of Babcock under his employment and to negative any knowledge of King and Uhl that he was performing or ever had performed any duties outside of those for which he was employed. While questions were asked, and to which objections were sustained, with a view of eliciting testimony upon this point, a review of the whole record will show that the witnesses to whom these questions were put, did testify fully upon this subject. And without reviewing each individual instance of which complaint is made, we hold that there was no error of which the plaintiffs-in-error can justly complain in the rulings upon the evidence. The effect of this ruling will be further considered in connection with the charge. Upon this subject of the scope of Babcock's duties, the court said to the jury :

" Was Henry Babcock on the evening the plaintiff was injured, in the employ of the defendants King and Uhl ? Was he, when he removed the covering from the coal-hole, acting within the scope of his employment ? It is for you to determine from all the evidence in the case, whether or not he was so acting, and if you find that he was so acting within the scope of his employment at the time when plaintiff was injured, then for his acts the defendants King and Uhl would be liable. If he was not at said time so acting within the scope of his employment, then they would not be liable for his acts."

And further, counsel for plaintiffs-in-error submitted to the court several requests which they asked to be given to the jury as a part of the charge. These requests were refused.

The ground of the complaint is, that the court had given the jury no guide by which to determine the fact whether Babcock was or was not acting within the scope of his employment at the time he assisted in the reception of the coal.

The charge was a correct statement of an abstract proposition of law, but, it is claimed, however, to be so general and so loosely stated as to be no guide to the jury in determining the facts of this case and that this defect was remedied by the requests which have been given.

Suppose these propositions had been given in the charge of the court to the jury and the jury had found that Babcock in all he did in and about this removal of that cover from the coal-hole was acting outside of the scope of his employment in no way binding King and Uhl, would that fact by any possibility relieve them from liability to the defendant in error. The duty of King and Uhl in the use of the opening was a continuous affirmative one. Their negligence was not the result of acts done but from acts omitted to be done. The charge of negligence in the petition is in these words : " Plaintiffs aver and charge it to be a fact that on or about the twenty-fifth day of November, 1896, at half-past five o'clock in the evening, said defendants, while said sidewalk was filled with people passing and re-passing thereon, removed the slide or covering from said manhole in said sidewalk in front of said block for the purpose of allowing the defendant, The Zettelmeyer Coal Company, to precipitate coal into said vault." So far no complaint of carelessness is made against the defendant; but it is added: " and carelessly, negligently and recklessly put up no sign and gave no notice

that the same was open, and, without in any way guarding said opening or taking any precaution whatever to prevent passers over the sidewalk from slipping and falling therein, and still knowing it to be unsafe and dangerous from the crowded condition of said sidewalk and from the uncertain and insufficient light at the time and place, allowed and caused the same to remain open without precaution or without any light or sign to indicate the dangers as aforesaid."

No duty to the public was violated in opening the coal-hole for the purpose of delivering coal into that vault. It was permitted to be placed there for that purpose, but negligently omitting to properly guard it when so used, constituted the breach of duty complained of.

Some one represented King and Uhl in that transaction, or clearly should have done so. The coal company were employed to deliver to King and Uhl that coal and into that vault and through that opening. And the effect of our holding as to the relations between King and Uhl and the coal company is, that King and Uhl are responsible to passers on the sidewalk for the manner in which that work was done by the coal company. If Babcock had not been in the employ of King and Uhl at all and had been requested to remove that cover by the driver of the coal wagon and then guard the hole while the driver backed his load upon the sidewalk, King and Uhl would *not* be absolved from liability.

Again, if Babcock had been a mere interloper and seeing the driver about to deliver the coal at that hole, and removed the cover with the knowledge of the driver, it would have been the driver's duty to see that it was properly guarded and his failure to do so would be the failure of King and Uhl. If the driver sought or accepted the aid of Babcock in the work of delivering that coal and injuries resulted to a traveller on the sidewalk from the negligent manner in which the work was done, King and Uhl were responsible. It was a failure on their part to protect the public from the dangers incident to its use.

There was, in fact, no defense attempted in the case, that could relieve King and Uhl from negligence in leaving that opening unguarded, except the one that the coal company was an independent contractor and alone responsible for the negligence in leaving the hole unguarded. Under the charge of the court, the jury determined that issue against the plaintiffs in error and, as we think, rightly.

With that issue found for the defendant in error and on the undisputed facts, taken in connection with such finding, the defendant in error was entitled to a verdict.

It may be suggested that the jury based their verdict wholly on the negligence of Babcock, and found that the coal company was guilty of no negligence. It does not definitely appear upon what theory the jury reached their verdict. They may have found a right verdict based upon wrong reasons, but, if the verdict was clearly right under the conceded facts of the case and such as have been properly determined by the jury against the plaintiffs in error, then we see no good reason for disturbing the judgment.

*C. E. Pennewell*, counsel for plaintiffs in error.

*H. H. Poppleton* and *Billman & Billman*, counsel for defendant in error.